UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT L. BILLINGS,

                Plaintiff,

  -against-                                     7:06-CV-37
                                                          (LEK/GJD)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Robert L. Billings ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 22, 2004. Administrative Transcript ("AT") 43-45, 176-78. The applications were denied initially. AT 32, 175. A request was made for a hearing. AT 37. A hearing was held before an Administrative Law Judge on March 14, 2005. AT 195-212. In a decision dated August 24, 2005, the ALJ found that Plaintiff is not disabled. AT 8-18. The Appeals Council denied Plaintiff's request for review on December 29, 2005. AT 4-7. Plaintiff commenced this action on January 11, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.    Contentions**

Plaintiff makes the following claims:

(1) The Commissioner failed to properly evaluate the medical opinions of record. Dkt. No. 6 at 10-15.

(2) The Commissioner failed to properly determine Plaintiff's residual functional capacity. Dkt. No. 6 at 15-16.

(3) There is no substantial evidence to support the Commissioner's conclusion that there is significant work in the national or regional economies that Plaintiff could perform. Dkt. No. 6 at 17-18.

(4) The ALJ failed to properly evaluate Plaintiff's credibility. Dkt. No. 6 at 18-20.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Dkt. No. 8.

**C.     Facts**

Plaintiff was thirty-three years old at the time of the hearing. AT 43, 195. Plaintiff received his high school equivalency diploma. AT 63. Plaintiff's past work experience includes working as a drywall laborer, pool cleaner, general laborer, and mover/driver. AT 58, 199-201. Plaintiff alleges that he became unable to work on October 1, 1999. AT 43, 176. Plaintiff alleges disability due to knee problems. AT 57. Plaintiff also injured his left shoulder. AT 211.

**1.     Knees**

**a.     D. Peter Van Eenenaam, M.D.**

From September 30, 1998 to May 5, 2004, Plaintiff treated with D. Peter Van Eenenaam, M.D., an orthopaedist. AT 120-21, 145-59. Dr. Van Eenenaam noted that on September 28, 1998, Plaintiff injured his left knee "when he jumped up on a moving truck and felt a hyperextension[-]type injury to his knee and felt something pop inside his knee." AT 158. He also noted that Plaintiff previously had ACL reconstruction on his right knee. Id. Dr. Van Eenenaam diagnosed Plaintiff as suffering from a left knee internal derangement, possible medial meniscus tear, and possible anterior cruciate ligament tear. AT 159.

In February of 1999, Plaintiff underwent an ACL reconstruction on his left knee. AT 156. Plaintiff responded well, although he was later diagnosed as suffering from a cyst on the back of his

2

left knee. AT 153, 154.

An MRI of Plaintiff's left knee performed on December 20, 1999 showed status-post ACL reconstruction with expected postoperative changes; an intact patellar tendon; early osteoarthritis in the medial compartment; but no meniscal tear. AT 164.

In March or April of 2000, Plaintiff underwent a left knee diagnostic arthroscopy, debridement, and limited chondroplasty. AT 153. Post-operatively, Plaintiff was doing "very well." Id. However, Plaintiff subsequently experienced pain and swelling in his left knee. AT 152. Dr. Van Eenenaam determined that Plaintiff suffered from degenerative arthritis in his left knee and a possible meniscus tear. Id.

An MRI of Plaintiff's left knee performed on October 12, 2001, showed, *inter alia*, postoperative changes in the anterior horn of the medial meniscus and a question of a meniscal capsular injury posteriorly; a small loose body or fibrous material filling in a chondral defect in the medial femoral condyle; a meniscal cyst posterior to the medial femoral condyle with associated femoral condyle and tibial plateau bruises. AT 161.

In early December of 2001, Plaintiff underwent an arthroscopy on his left knee. AT 151. Debridement for cartilage lesions was performed. Id. On February 13, 2002, Plaintiff was "doing much better." AT 150. Plaintiff was treated with medications, Synvisc injections, and a knee brace. AT 145-47.

On February 18, 2003, Dr. Van Eenenaam opined that Plaintiff has a permanent partial disability of a mild degree and should not perform excessive squatting, bending, or lifting. AT 149.

On March 30, 2005, Dr. Van Eenenaam completed an interrogatory regarding Plaintiff's symptoms ("March 2005 opinion"). AT 120-21. Dr. Van Eenenaam indicated the following: If Plaintiff were older, due to his chronic pain, he would be an appropriate candidate for right and left

3

knee replacements; Plaintiff's pain increases if he sits too long, stands too long, or walks too far; Plaintiff needs to elevate his legs for a substantial period of time throughout the day; Plaintiff needs to apply heat to his knees approximately three times each day for fifteen to thirty minutes to help reduce his pain; Plaintiff needs to apply ice to his knees approximately two times each day for approximately twenty minutes each time to help reduce swelling; Plaintiff's knees can "give out" at unpredictable times; and Plaintiff does not sleep well as the result of pain in his knees.  Id.

### b.    Charles Moehs, M.D.

On June 29, 2004, Plaintiff was examined by Charles Moehs, M.D.  AT 169-72.  On examination, Plaintiff exhibited a decreased range of motion of both knees.  AT 170.  Dr. Moehs diagnosed Plaintiff as suffering from a history of bilateral ACL tears of both knees with osteoarthritis and chronic pain.  Id.

### 2.    Left Shoulder

### a.    Emergency Room

On March 28, 2004, Plaintiff went to the emergency room of Samaritan Medical Center with severe pain in his left shoulder.  AT 129.  Plaintiff developed the severe pain after lifting weights. Id.  Plaintiff was prescribed Vicodin and Hydrocodone, and referred to an orthopedist.  AT 131.

### b.    Perry Shuman, M.D.

On April 2, 2004, Plaintiff was examined by Perry Shuman, M.D., an orthopedist.  AT 133. On examination, Plaintiff exhibited full range of motion of his shoulder, but a positive impingement sign.  AT 133.  Dr. Shuman diagnosed Plaintiff as suffering from left shoulder pain and recommended physical therapy, ultrasound, heat, massage, and x-rays.  Id.  Dr. Shuman prescribed Vicodin and Bextra.  Id.

### c.     Edward Powell, M.D.

On April 13, 2004, Plaintiff was examined by Edward Powell, M.D., an orthopedist. AT 132. Dr. Powell reviewed x-rays of Plaintiff's left shoulder and noted "just a little bit of narrowing in the AC joint." Id. Otherwise, the x-ray of Plaintiff left shoulder was normal. AT 134. Dr. Powell prescribed Vicodin. Id.

### d.     Physical Therapy

From April 9, 2004 to May 3, 2004, Plaintiff attended physical therapy on seven occasions. AT 136-44. Plaintiff appeared to make progress toward treatment goals. AT 136-44.

## II.     DISCUSSION

### A.     Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in

>  substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 12. At the second step, the ALJ determined that the residuals from the arthroscopic and reconstructive surgeries on Plaintiff's knees and the residual degenerative arthritis in Plaintiff's left knee represent severe impairments. AT 14. At the third step, the ALJ concluded that those impairments neither met nor equaled any impairment listed in Appendix 1 of the regulations. Id. At the fourth step, the ALJ found that Plaintiff retains the RFC to lift and carry ten pounds, sit for six hours in an eight-hour workday, and stand or walk for two hours in an eight-hour workday. Id. Moreover, Plaintiff should not perform activities requiring more than occasional crawling, climbing, kneeling, crouching, stooping, or balancing. Id. The ALJ therefore found that Plaintiff is unable to perform his past relevant work. AT 16. At the fifth step, the ALJ consulted the Medical-Vocational Guidelines and concluded that Plaintiff is not disabled. AT 17.

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJs findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains

7

substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

    **C.**    **Treating Physician**

Plaintiff argues that the ALJ failed to adhere to the treating physician rule and assign proper weight to Dr. Van Eenenaam's opinion. Dkt. No. 6 at 10-14.

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

Halloran, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting Gonzalez v. Callahan, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988))). However, if not controlling, the proper weight given to a treating physician's

opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination.  Schaal, 134 F.3d at 505.

      The ALJ assigned "moderate but not great weight" to Dr. Van Eenenaam's March 2005 opinion.  AT 15.  The ALJ first stated that "the evidence does not establish significant deterioration in the claimant's condition after [Dr. Van Eenenaam's] findings from February 2003."[1]  AT 15.  However, contrary to the ALJ's finding, Dr. Van Eenenaam's progress notes suggest that after February of 2003, Plaintiff's condition worsened to the point that he went to the emergency room due to knee pain and received a series of Synvisc injections from June 24, 2003 to July of 2003.  AT 146-47.  On July 25, 2003, Dr. Van Eenenaam noted that Plaintiff had a "*fairly extensive degenerative change* in the knee."  AT 146 (emphasis added).  On May 5, 2004, Dr. Van Eenenaam noted that Plaintiff has a "degenerative knee and his symptoms are all consistent with that."  AT 145.  Dr. Van Eenenaam even considered administering "another round of Synvisc injections."  Id.  Dr. Van Eenenaam prescribed a strengthening exercise program, a knee sleeve brace, and various medications, including chondroitin sulfate glucosamine and an anti-inflammatory medication.  Id.  Accordingly, Dr. Van Eenenaam's progress notes suggest that Plaintiff's condition worsened from February of 2003.

---

[1] As noted, on February 18, 2003, Dr. Van Eenenaam found that Plaintiff has a partial disability of a mild degree and that he should not perform "excessive" squatting, bending, and lifting.  AT 149.

Second, the ALJ also explained that "the conclusion regarding increased pain with prolonged sitting is inconsistent with the claimant's testimony that he spends most of his day sitting." AT 15-16. While Plaintiff stated that he spent his days sitting in his house, Plaintiff previously stated that he must alternate sitting and standing. AT 202, 204. Plaintiff also stated that sitting for "too long" causes his legs to swell, so he must elevate his legs "[a]ll the time." AT 209. He stated that he would be unable to go to a movie theater because he "wouldn't be able to sit in [the] little booths for a whole movie. [He would] have to be up and down." AT 210. Therefore, the ALJ's finding regarding Plaintiff's ability to sit for prolonged periods, which the ALJ based on one statement made by Plaintiff, is contradicted by several other statements made by Plaintiff.

Third, the ALJ also stated that the "notation of the claimant's knees giving way is based on the claimant's subjective complaint." AT 16. However, even if Dr. Van Eenenaam's finding that Plaintiff's knees "give way" was based on Plaintiff's subjective complaint, the regulations provide that a "medical opinion" is a judgment about the nature and severity of a claimant's impairment(s), including a claimant's symptoms. 20 C.F.R. § 404.1527(a)(2). Thus, Dr. Van Eenenaam's opinion is a judgment which may include Plaintiff's symptoms.

Fourth, the ALJ also stated that none of "the other" findings in the March 2005 interrogatory prevent the claimant from performing the requirements of 'sedentary' work." AT 16. However, one of Dr. Van Eenenaam's "other findings" is that Plaintiff's pain increases if he stands or walks "too long." AT 120. Sedentary work generally involves up to two hours of standing or walking in an eight-hour workday. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted); see 20 C.F.R. § 404.1567(a). The amount of time that Dr. Van Eenenaam considers "too long" is unclear. This treating source should have been contacted for clarification of his opinion. The regulations specifically provide, "*We will seek* additional evidence or *clarification from your medical source*

10

when the report from your medical source *contains a conflict or ambiguity that must be resolved*, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1) (emphases added). Thus, Dr. Van Eenenaam should have been contacted for clarification of his opinion.

In light of the foregoing, the Court is unable to conclude that the ALJ's assignment of less than controlling weight to Dr. Van Eenenaam's opinion is supported by substantial evidence. Therefore, the matter must be remanded.

      **D.**    **Credibility**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

11

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ found that Plaintiff's complaints are "only partially credible." AT 15. The ALJ stated that the medical evidence fails to support the degree of alleged pain. Id. The ALJ pointed out that during an examination by Dr. Moehs, Plaintiff "had only [a] mildly reduced range of motion in his knees and he was walking 'fairly normally' without a limp. The claimant reported being able to wash and dress without assistance." AT 15, 170.

The ALJ also pointed out that Plaintiff "spends most of his day 'sitting and doing absolutely nothing.'" Id. However, as noted, Plaintiff stated that he must alternative sitting and standing and that sitting for "too long" causes his legs to swell, so he must elevate his legs "[a]ll the time." AT 202, 209.

The ALJ again stated that the record showed no significant deterioration in Plaintiff's condition since February of 2003. AT 15. However, as previously discussed, Dr. Van Eenenaam's progress notes suggest that Plaitniff's condition worsened, as he subsequently went to the emergency room due to knee pain and received a series of Synvisc injections. AT 146-47. Moreover, on July 25, 2003, Dr. Van Eenenaam noted that Plaintiff had a "*fairly extensive*

*degenerative change* in the knee." AT 146 (emphasis added). On May 5, 2004, Dr. Van Eenenaam noted that Plaintiff has a "degenerative knee and his symptoms are all consistent with that." AT 145. Dr. Van Eenenaam even considered administering "another round of Synvisc injections." Id. Dr. Van Eenenaam prescribed a strengthening exercise program, a knee sleeve brace, and various medications, including chondroitin sulfate glucosamine and an anti-inflammatory medication. Id. Therefore, contrary to the ALJ's finding, Dr. Van Eenenaam's progress notes suggest that Plaintiff's condition worsened from February of 2003.

In light of the foregoing, the Court is unable to conclude that the credibility determination is supported by substantial evidence. Therefore, the matter must be remanded.

### E. Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining his RFC. Dkt. No. 6 at 15-16.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996). RFC is then used to determine whether the

claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

The ALJ determined that Plaintiff could perform sedentary work, but could not perform more than occasional crawling, climbing, kneeling, crouching, stooping, or balancing. AT 14. However, Plaintiff argues that he is unable to sit for prolonged periods.[2] Dkt. No. 6 at 15-16. For support, Plaintiff points to his testimony and the findings of Dr. Van Eenenaam. Id. As noted, Plaintiff testified that he must alternate sitting and standing and that he must elevate his legs because of swelling in his legs. AT 202, 209. Similarly, Dr. Van Eenenaam opined that Plaintiff's pain increases if he sits "too long" and that Plaintiff must elevate his legs for a substantial period of time. AT 120.

The Court previously determined that the ALJ's assessment of Plaintiff's credibility, and the assignment of less than controlling weight to Dr. Van Eenenaam's opinion, are not supported by substantial evidence. Therefore, the Court is unable to find that the ALJ properly determined Plaintiff's RFC. Accordingly, the matter must be remanded for a reevaluation of Plaintiff's RFC.

**F.     Step Five Determination**

Plaintiff argues that the ALJ erred in consulting the grids because Plaintiff suffers from various nonexertional impairments. Dkt. No. 6 at 17-18. Plaintiff claims that the ALJ should have consulted a vocational expert. Id.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d

---

[2] Sedentary work generally involves up to six hours of sitting in an eight-hour workday. Perez, 77 F.3d at 46.

Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a).  The ALJ may apply Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE").  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.  If a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate.  Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

Because the Court is remanding for a reevaluation of the treating physician's opinion, Plaintiff's credibility, and RFC, the Court directs remand on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  See Bapp, 802 F.2d at 605-06 (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

### III.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits is **REVERSED** and this matter **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[3] for further proceedings consistent with the above; and it is further

---

[3] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:     August 20, 2008
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge